UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

**FILED**

99 APR 21 PM 4:21

U.S. DISTRICT COURT
N.D. OF ALABAMA

|  |  |  |
|---|---|---|
| LARRY WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-98-S-0062-NE |
| | ) | |
| CHRYSLER CORPORATION, | ) | |
| | ) | **ENTERED** |
| Defendant. | ) | |
| | | APR 2 1 1999 |

## MEMORANDUM OPINION

Plaintiff, Larry Wright, commenced this action on January 12, 1998, alleging claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Wright alleges two claims in his complaint: the first based upon a disparate impact theory, because a group of protected age group employees "were denied access to the Chrysler internal placement process and thereby were denied availability for interview at Chrysler facilities ..."; and the second for disparate treatment based upon plaintiff being denied fourteen specific jobs with Chrysler, allegedly because of his age. (Complaint, Doc. No. 1, ¶ 4.) Wright seeks "immediate placement at any domestic Chrysler facility, in a position consistent with his classification, grade, pay rate, and all other privileges of employment ..." (Id. at ¶ 5.) The action presently is before the court on defendant's motions for summary judgment.

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..." (Emphasis added.) The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) *(per curiam)*. Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific

2

facts showing there is a genuine issue for trial. *See Jeffery*, 64
F.3d at 593.

In deciding whether the moving party has met its burden, the
court is obligated to draw all inferences from the evidence
presented in the light most favorable to the non-movant and, also,
to resolve all reasonable doubts in that party's favor. *See Spence
v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor
of the non-movant are not unqualified, however. "Mere general
allegations which do not reveal detailed and precise facts will not
prevent the award of summary judgment." *Resolution Trust Corp. v.
Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted).
Moreover, evidence that is merely colorable, *see Brown v. City of
Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see
Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or
conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence
could draw more than one inference from the facts, and if that
inference introduces a genuine issue of material fact, then the
court should not grant summary judgment. *See Augusta Iron & Steel
Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir.
1988). A "genuine" dispute about a material fact exists if the

3

"evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

With the foregoing standards in mind, the following facts either are not disputed, or are stated in a light most favorable to plaintiff.

## II. FACTS

Larry Wright was born on March 3, 1943, which makes him 56 years old on today's date, and 53 during the period forming the basis of his claims.[1] After graduating high school in 1961, he attended Indiana University where he received a Bachelor of Arts degree in Psychology in 1967.[2] He pursued a Master of Business Administration degree from the same institution between February and August of 1967, but did not complete all degree requirements.

---

[1] Wright Deposition at 9.

[2] *Id.* at 15.

4

He nevertheless obtained a Master of Personnel Administration degree from Alabama A & M University in 1977.[3]

Plaintiff began his career with General Telephone & Electronics (GTE), working in various human resource capacities between 1967 and 1972.[4]   He was employed by Teledyne Brown Engineering from 1972 until 1974 in personnel and professional development.  Plaintiff returned to work for GTE as Director of Public Affairs in 1974, where he remained until November of 1978,[5] when he joined the Barber-Coleman Company as Personnel Manager.  He was responsible for the human resources program of a 500 person manufacturing plant.[6]  Between 1983 and 1984, plaintiff worked for Mueller   Corporation   as   Personnel   Administrator.        His responsibilities included personnel and safety matters, as well as participating in union contract negotiations.  Beginning in April of 1984 and continuing through April of 1986, plaintiff was employed by Sverdrup Technology as Employment Supervisor.[7]

Plaintiff began his employment with Chrysler Corporation in April of 1986.  He was hired initially by the Acustar Electronics

---

[3] *Id.*

[4] *Id.* at 24.

[5] *Id.* at 23-24.

[6] Personnel   Manager   duties   include:   labor   relations,   wage/salary administration, benefits administration, and plant safety.  *Id.* at Exhibit 2.

[7] Wright Deposition, Personal History Record, Exhibit 2.

5

Division as supervisor of employment and recruitment. His
responsibilities included employment activities, affirmative
action, and EEO programs. Plaintiff resigned from Acustar on June
12, 1989, by submitting a two week notice. He failed to return to
work after that day, however. Because of that, plaintiff was not
recommended for rehire at the Acustar facility.[8]

Plaintiff was self-employed as a professional recruiter for
eleven months[9] before he returned to work for Chrysler in July of
1990. At that time, plaintiff was hired by Pentastar Electronics,
Inc., a division of Chrysler Technologies, Inc., as a Personnel
Manager. Chrysler Technologies, Inc., is a wholly owned subsidiary
of the Chrysler Corporation. It functioned as a holding company
for all of Chrysler's Aerospace and Defense operations. During
1990, five operating companies reported to Chrysler Technologies,
Inc.: Gulfstream Aerospace; Electrospace Systems; Airborne Systems;
Pentastar Electronics; and Chrysler Technologies International.[10]
As personnel manager, plaintiff was responsible for personnel and
human resource services. Plaintiff also was a member of the local
union negotiating committee.[11]

---

[8] Willoughby Affidavit, ¶ 2; Exhibit A.
[9] Wright Deposition, Exhibit 2.
[10] Stellman Deposition at 8-10.
[11] Wright Deposition, Exhibit 2.

6

Plaintiff sometimes used a personal computer in the performance of his job duties for Chrysler. He described his computer proficiency as follows:

> Q. Do you have any computer expertise of any kind, Mr. Wright?
>
> A. I use a PC [personal computer] in my job. I'm definitely not an expert.
>
> Q. What computer programs are you familiar with?
>
> A. We use Excel, WordPerfect. We have a Vax mainframe computer that we use. And I've got all that stuff that goes with that, an OB and acrobat and all the other things that you can do with those software programs.
>
> Q. You know how to operate all those programs?
>
> A. Feebly. I can do e-mail. I can write letters, that sort of thing. I'm not an expert, as I said.
>
> Q. Have you ever used Lotus?
>
> A. I had a class in Lotus while I was a Chrysler employee but I can't remember much about it and have not used it. We has a class in spreadsheet. And I can't remember the other factor.

(Wright Deposition at 16-17).

During December of 1994, Chrysler instituted a computerized job posting system called the Internal Placement Process, which allowed employees to "self-nominate" for job openings within Chrysler Corporation's various plants and entities, provided the employee met three requirements: "1) meet the requirements posted

7

in the Open Position Notice; 2) received a supervisory assessment rating of Contributor or higher[12]; 3) had a minimum of 18 months in their current position."[13] When an employee "self-nominates" for a position, his or her Personal History Record is electronically sent to the hiring manager for such position.[14] Each employee is responsible for preparing his or her own Personal History Record.[15] Utilization of the Internal Placement Process was not the sole way to apply for vacant positions within Chrysler, however. According to plaintiff's deposition:

> Q.   Is there any way to change jobs at Chrysler without going through the internal placement system?
>
> A.   Sure.

---

[12] Defendant's Human Resource Manager rating system is as follows:
Performance Ratings:
4 - Role model
3 - Significant contributor
2 - Contributor
1 - Needs improvement

Potential Ratings:
4 - Significant potential
3 - Some potential beyond their current level
2 - Proper level
1 - Above their capabilities

Stellman Deposition at 57.

[13] Chrysler's Motion for Summary Judgment, Exhibit 1.

[14] Chrysler's Internal Placement Process Handbook states "[t]he purpose of the Personal History Record is to provide the hiring manager with consistent information regarding candidates. You are encouraged to utilize the Personal History Record to convey accurate information about your education/training, experience, and skills/competencies." Chrysler's Motion for Summary Judgment, Internal Placement Process Handbook, Exhibit 1. An employees date of birth is not listed on their Personal History Record. Wright Deposition at 25.

[15] Chrysler's Motion for Summary Judgment, Exhibit 1, at 7.

8

APR-21-1999 16:30                         205 551 0741      P.010/066

Q.   What is that procedure?

A.   A manager can know of an individual and request
     that that individual be made available to
     interview.

Q.   Who does the request have to go to?

A.   Through that employee's supervisor.   Now that
     doesn't mean these jobs were not also listed on the
     self-nomination system.

Q.   Right now I'm just trying to figure out how this
     other process operates.   Is personnel - - if a
     manager knows of somebody they're interested in
     interviewing for an available job - -

A.   Uh-huh.

(Wright Deposition at 47-48.)    Plaintiff admits his Personal
History Record was accurate, except for omitting his work
experience between 1967 and 1978.[16]

     Plaintiff was generally eligible to participate in Chrysler's
Internal Placement Process as a salaried, non-bargaining unit
employee of Pentastar.   He received the following supervisory
assessment ratings:   1994 - Contributor, Effective, 3 (some
potential beyond current level); 1995 - Contributor, Effective, 2
(proper level).[17]

---

[16] Wright Deposition at 24. *See* notes 4-5, *supra* and accompanying text.
[17] Stellman Deposition at 57-59.

9

## A. "Freeze" of Chrysler's Internal Placement Process

Between February and June of 1996, several potential purchasers of Chrysler Technologies, Inc. emerged. As a result, all non-bargaining unit employees, a group which included plaintiff, were not allowed to use the Internal Placement Process to transfer out of Chrysler Technologies, Inc. The purpose of this "freeze" was to preserve the workforce during sales negotiations.[18] Plaintiff spoke to George Johnson, Human Resource Manager, concerning the freeze. Johnson explained to plaintiff that the freeze resulted from the potential sale. Plaintiff made no attempt to utilize the Internal Placement Process during the freeze, nor can he identify any position he was qualified for during that time.[19] Plaintiff contends that eleven employees were nevertheless allowed to bid out of Pentastar despite the freeze. This contention, however, merely is an assumption by plaintiff.[20] Plaintiff also contends that, contrary to Chrysler's stated purpose of retaining the workforce, Chrysler laid-off several employees during the freeze.[21] Plaintiff concedes, however, that these lay-offs were a result of contract difficulties: specifically, that

---

[18] Johnson Deposition at 22-23.
[19] Wright Deposition at 33, 39-40.
[20] Id. at 55.
[21] Id., Exhibit 4.

10

these individuals were laid off because of the withholding of funds on a contract held by Pentastar.[22]

In June of 1996, Chrysler sold all subsidiaries of Chrysler Technologies, Inc., except for Pentastar Electronics, Inc., thereby lifting the freeze and allowing Pentastar employees to utilize the Internal Placement Process once again. In an effort to remain a Chrysler employee, plaintiff utilized the Internal Placement Process on fourteen separate occasions, self-nominating himself for various positions between July and October of 1996. Plaintiff was neither interviewed nor selected for any of these open positions.[23]  Plaintiff testified that he did not believe Chrysler had an intent to discriminate against any employee on the basis of age, but that such was the effect of its actions.[24]

Chrysler sold Pentastar Electronics, Inc. to PEI, Inc. on January 10, 1997.[25]  On that date, plaintiff ceased being a Chrysler employee. He nevertheless retained his same job in the same office with PEI.[26]

---

[22] *Id.* at 77, 80.
[23] *Id.* at 278-280.
[24] *Id.*
[25] *Id.* at 9.
[26] *Id.* at 10-11.

11

## B.   Fourteen Self-Nominated Positions

### 1.   Personnel Program Administrator - MOPAR

Allan Benit was the personnel administrator supervisor in charge of hiring for this position.   Benit does not know plaintiff's age.[27]   In selecting candidates to interview, he reviewed the list of self-nominated applicants along with each Personal History Record he had received.   The Open Position Notice for the position listed the following minimum requirements:

Education - Training - Requirements:
Bachelor Degree in business or personnel related discipline preferred; Masters Degree a plus.

Experience - Requirements:
Some experience in personnel related functions is required: knowledge of UAW national agreements preferred.

Skills- Competencies - Requirements:
Knowledge of computer programs and thorough knowledge of SEAS is required.  Excellent PC skills including Lotus and Word Perfect.  Must have exceptional interpersonal skills.

Other - Requirements:
Must meet all immigration requirements.

(Benit Affidavit, Exhibit A (emphasis supplied).)   According to Benit, plaintiff was not selected for interview because he did not meet the computer skills minimum requirements listed in the Open Position Notice.   Benit instead selected Julie McIntosh for the

---

[27] Benit Affidavit, ¶ 5.

12

position.   She had been employed as an administrative assistant

with Chrysler since 1985, and had extensive computer training.[28]

**2.   Personnel Program Specialist - Chrysler Financial Center**

Five candidates were selected for interview by Susan Zettel,

hiring manager for Chrysler Financial Center's Personnel Program

Specialist position.[29]    Each had received higher performance

---

[28] *Id.*, Exhibit B.

[29] The Personnel Program Specialist Open Position Notice required:

Education Training:
Bachelor's degree is required; concentration in h.r., industrial
relations or business administration and an advanced degree are
preferred.

Experience:
18 mos. To 5 years minimum experience in the human resource
organization, including compensation and placement.  Group or plant
experience helpful.

Skills/Competencies:
Strong communication skills and ability to deal with many customers
including Sr. Mgmt, PC proficiency, strong organizational skills,
and knowledge of benefit plans helpful (I.E. SESP, SERP, IPP, etc.)

Other:
Must be flexible, team oriented and customer focused.  Some travel
required.

Zettel Affidavit, Exhibit A.

13

APR-21-1998  15:00                                    205 551 0741   P.015/066

appraisal ratings for 1995 than plaintiff.[30]  Zettel does not know
plaintiff's age.[31]

This position also had been used by Chrysler as part of its
Advanced Degree Development Program rotation for many years.[32]  At
the time of posting the Open Position Notice, no Advanced Degree
Development Program candidate was available.  Subsequent to the
posting, however, Walter Bartels, an Advanced Degree Development
Program candidate, became available. He, therefore, was placed in
this position as part of his rotation assignments.[33]

### 3.   Personnel Program Administrator - Kokomo Transmission Plant

During 1996, James Mullins was employed by Chrysler as Labor
Relations Supervisor.[34]  He was responsible for personnel functions

---

[30] Plaintiff received the following performance appraisal ratings in 1995:
Contributor, Effective, At proper level.  In contrast, the five candidates
interviewed and their respective 1995 performance appraisal ratings were as
follows:

    Carol Adams: Role model, Role model, Significant potential
    Arthur Segal: Significant contributor, Highly effective, Some
            potential
    Arnita Wilson: Significant contributor, Highly effective,
    Significant potential
    Marvin Moore: Significant contributor, Highly effective, Some
            potential
    Elena Tuzek: Role model, Role model, Some potential

Zettel Affidavit, ¶ 2.
    [31] *Id.* at ¶ 4.
    [32] *Id.* at ¶ 3.
    [33] *Id.*
    [34] Mullins Affidavit, ¶ 1.

14

at the Kokomo transmission facility. As such, he was the hiring manager for the Personnel Program Administrator position for which plaintiff self-nominated himself. Mullins reviewed the self-nomination list along with the names and Personal History Record provided by the Human Resource Development Committee.[35] Mullins is not aware of plaintiff's age.[36]    Plaintiff was not selected for this position.[37] Brian Dilley, an outside applicant, was selected instead. Mullins' reasons for his selection were that Dilley had "3 years experience in [human resources] for Shell Oil Co.; he is an exceptionally well qualified minority with a BS from [Michigan State University] and a dual MS in Labor and Law. He has passed the bar in Texas. He brings outstanding credentials, is willing to relocate and was selected by Committee in a competitive assessment

---

[35] *Id*. at ¶ 3.

[36] *Id*. at ¶ 4.

[37] The minimum requirements for the Personnel Program Administrator position were as follows:

Education - Training - Requirements:
Bachelor degree in business or human resources related discipline is required: An advanced degree is preferred.

Experience - Requirements:
Experience in human resources, production supervision and a working knowledge of Chrysler UAW contract provisions is preferred.

Skills - Competencies - Requirements:
Good interpersonal skills, must be computer literate, needs strong written and oral skills.

*Id.*, Exhibit A.

15

process."[38]   Plaintiff admits he is not licensed to practice law,

nor does he possess a law degree.[39]

### 4.   Employee Benefits Administrator - Windsor, Ontario Assembly

Plaintiff self-nominated himself for this Canadian-based

position.[40]   He had never worked in Canada, however, nor did he have

a Canadian work visa.[41]   A.J. Krueger was employed as the Workers'

Compensation and Placement Coordinator in Windsor, Ontario, and in

charge of hiring for this position.[42]   Krueger does not know

plaintiff's age.[43]   He reviewed plaintiff's Personal History Record,

---

[38] *Id.*, Exhibit C.

[39] Wright Deposition at 16.

[40] The Employee Benefits Administrator Open Position Notice contained the following minimum requirements:

Education Training:
Bachelor degree required

Experience:
Canadian Workers Compensation and plant manufacturing experience an asset.  Familiar with Lotus 1-2-3, WP 6.1, TEACS, and organizational development and planning concepts.

Skills/Competencies:
Superior communication skills both oral and written.   Must be flexible and adaptable to change and capable of working in a term oriented environment.  Must be able to work with all levels of B.U. and Non B.U. personnel.

Other:
Must be customer focused and able to work with minimal supervision. Prior demonstrated performance in handling multiple assignments.

Krueger Affidavit, Exhibit A.

[41] Wright Deposition, Exhibit 2; Krueger Affidavit, ¶ 3.

[42] Krueger Affidavit, ¶ 1.

[43] *Id.* at ¶ 5.

16

but did not select him for an interview because plaintiff had no experience working in either a Canadian assembly plant or with Canada's Workers' Compensation Board.[44] Dean Testani was selected instead, based on his prior experience at the Windsor Assembly plant.[45]

5. **Human Resource Manager - Evart, Michigan, Glass Plant**

In 1996, Evilio Bertolozzi was the Plant Manager at Chrysler's Evart Glass Plant. He was in charge of hiring the Human Resource Manager for that facility.[46] At the time this position was being

---

[44] *Id.* at ¶ 3.

[45] *Id.* at ¶ 4. Dean Testani had held the following position at the Windsor Assembly plant: production worker, maintenance clerk, and budget analysis. *Id.*

[46] Bertolozzi Affidavit, ¶ 1. This position had the following minimum requirements:

Education Training:
Four year degree, preferably in business or related human resource field; advanced degree preferred.

Experience:
Minimum eight years human resource experience including some union relations. Contract negotiations experience preferred. Good understanding of personnel program & policy admin, safety, comp & benefits work comp.

Skills/Competencies:
Must be able to work with all levels of management as well as foster & maintain a good working relationship with union officials. Excellent written & verbal communication skills. PC skills W/Word Perfect., CC:Mail, Lotus.

Other:
Eligible for plant progress sharing program vs. corp profit sharing. Must relocate to Evart, Michigan area.

*Id.*, Exhibit A.

17

filled, Chrysler was in the process of selling the Evart Glass facility. Bertolozzi therefore was not inclined to select someone that would not be a Chrysler employee in the near future.[47] Bertolozzi instead limited his selection to two candidates: one who was currently employed at the Evart Glass Plant; and the other was a former employee of Chrysler who resided in the Evart, Michigan area.[48]

This court notes in passing that plaintiff testified in his deposition that he applied for the fourteen positions discussed herein in an effort to remain a Chrysler employee.[49] That purpose would not have been served by the Evart position, had it been offered, since he still would have ceased being a Chrysler employee in a very short period.

Bertolozzi was aided in the selection process by Human Resource Manager, Ruth Moore.[50] Bertolozzi is not aware of plaintiff's age.[51] The second candidate under consideration, Russ Fatum resided in the Evart, Michigan area and did not have to relocate to accept the position. He was chosen for this position

---

[47] Id. at ¶ 3.
[48] Id.
[49] Wright Deposition at 115.
[50] Bertolozzi Affidavit, ¶ 4.
[51] Id. at ¶ 5.

18

based on his location, experience in the local community, and his previous experience with Chrysler.[52]

### 6. Health/Safety Supervisor - St. Louis Assembly South Minivan Plant

Plaintiff self-nominated himself for Health/Safety Supervisor at Chrysler's St. Louis Assembly South Minivan Plant. The Open Position Notice for this position listed the following minimum requirements:

> Education:
> Bachelor's Degree required. Advanced degree in safety or engineering is preferred.
>
> Experience:
> 5 years professional experience in occupational safety or engineering is required; 3 years supervisory experience and 5 years assembly experience is preferred.
>
> Skills/Competencies:
> Thorough knowledge of: Corporate H/S requirements; ergonomics, OSHA & other regulations; power house operations, pollution control, waste disposal, noise control, hazardous substances. Team building & computer skills are essential.
>
> Other:
> Must be certified or candidate for certification by the Board of Certified Safety Professionals; must supervise & develop staff; know & apply safety, quality delivery, cost & morale indicators, statistics & computer programs.

(Shagena Affidavit, Exhibit A (emphasis supplied).) P. Glen Shagena was Human Resource Manager at the St. Louis Assembly South

---

[52] *Id*. at ¶ 4.

19

Minivan Plant in 1996.   He was the hiring manager for the
Health/Safety Supervisor position.[53]   He reviewed plaintiff's
Personal History Record along with other self-nominated candidates.
Shagena does not know plaintiff's age.[54]  Plaintiff was not chosen
for interview based upon his lack of minimum requirements.
Plaintiff admits he does not have five years experience in safety
or engineering, nor is he a candidate for or hold a Certified
Safety Professional (CSP) certification.[55]  Shagena selected Thomas
F. Holly for the position.  Holly held a CSP certification and had
more than 5 years experience in safety.[56]

### 7.    Labor Relations Supervisor - St. Louis Assembly South Minivan Plant

Mr. Shagena also was the hiring manager for this St. Louis -
based position.[57]  Plaintiff was qualified for this position, in
that he met the minimum requirements listed in the Open Position
Notice.[58]  Shagena does not know plaintiff's age.[59]  Shagena reviewed

---

[53] Shagena Affidavit, ¶ 1.

[54] Id. at ¶ 7.

[55] Wright Deposition at 124-25.  Plaintiff only had two years professional safety experience.

[56] Shagena Affidavit, ¶ 4, Exhibit B.

[57] Id. at ¶ 1.

[58] The Labor Relations Supervisor Open Position Notice contained the following minimum requirements:

Education Training:
Bachelor's degree with a business or human resources major is
required; advanced degree in labor/industrial relations or business
is preferred.

20

each candidate's Personal History Record before selecting six
people to interview.  Following those interviews he requested to
interview Steve Politakis, who worked in the area and came highly
recommended.[60]  Politakis was born December 11, 1946, making him
only three years younger than plaintiff.[61]  Politakis was chosen as
Labor Relations Supervisor based on his knowledge of assembly
operations, in addition to his labor relations experience at
Chrysler's St. Louis North Assembly plant.[62]

### 8.  Human Resource Manager - Newark

Robert J. Forbes, hiring manager, and Jim Wolfe, plant
manager, worked together selecting candidates for this position.[63]

---

Experience:
Minimum of five years experience in human resources including union
relations.

Skills/Competencies:
Good working knowledge of the P&M and salaried agreements; HR and
LAN computer programs; employment/wage administration.  Must have
excellent written and oral communications skills.

Other:
Must have excellent planning, problem solving, negotiation &
organizational skills.  Must be able to function effectively in a
team oriented environment and interface with all levels of
management and represented employees.

Shagena Affidavit, Exhibit C.

[59] Id. at ¶ 7.

[60] Id. at ¶ 6.

[61] Wright Deposition, Exhibit 5.

[62] Id. at ¶ 6, Exhibit E.

[63] Forbes Affidavit, ¶¶ 1, 3.  The Human Resource Manager Open Position
Notice contained the following minimum requirements:

21

They reviewed the Personal History Record of each candidate,
looking for individuals with assembly plant experience in addition
to an extensive labor relations background, specifically dealing
with national UAW agreements.[64]   They also considered whether a
candidate worked in a "major" Chrysler facility.   Forbes is not
aware of plaintiff's age.[65]   Plaintiff was not chosen for an
interview based on the fact that he had no assembly plant
experience with Chrysler, only a limited labor relations
background, and had not worked with national UAW agreements.[66]
Forbes and Wolfe also did not consider Pentastar Electronics, Inc.,
to be a "major" Chrysler facility.   Archie Williams was instead

---

Education Training:
Bachelors degree required with business or related human resources
concentration preferred.   Advanced degree recommended.

Experience:
10 years experience in HR with emphasis in union relations and local
negotiations.   Experience in UAW agreement, safety, comp, HR
programs, and MOA's preferred.   5 yrs manufacturing experience
required.

Skills/Competencies:
Must be able to work with all levels of management as well as foster
and maintain a good working relationship with union leadership.
Excellent writing and verbal communication skills required.

Other:
Must be able to relocate and be involved in the local community as
a Chrysler representative.

*Id.* at Exhibit A.
   [64] *Id.* at ¶ 3.
   [65] *Id.* at ¶ 6.
   [66] *Id.* at ¶ 5.

22

selected for the position, based on his extensive labor relations experience dealing particularly with national and local UAW contracts. Williams also had been recommended by the Newark Plant Human Resource Management Committee.[67]  Archie Williams was born April 22, 1949 — making him only six years plaintiff's junior.[68]

## 9.  Personnel Administration Supervisor - Warren Truck Assembly Plant

James J. Tyler, Jr., served as the Human Resource Manager at Chrysler's Warren Truck Assembly Plant located in Warren, Michigan, and was in charge of hiring this position.[69]  He considered each Personal History Record submitted by self-nominated candidates. Tyler does not know plaintiff's age.[70]  Tyler based his interview selections on: educational achievement; diversity; manufacturing experience; hourly employment and salary administration experience; and overall human resource experience.[71]  He also did not choose any candidate for interview who did not meet the minimum requirements listed on the Open Position Notice. According to Tyler, plaintiff did not meet the following minimum experience requirements:

Experience-Requirements:

---

[67]  *Id.* at ¶ 4.
[68]  Wright Deposition, Exhibit 5.
[69]  Tyler Affidavit, ¶ 1.
[70]  *Id.* at ¶ 5.
[71]  *Id.* at ¶ 3.

23

> Minimum 5 years human resource experience. <u>Familiar with</u>
> <u>Lotus 1-2-3, WP 6.1, SEAS, TEACS,</u> & Organizational
> development & planning concepts.

(Tyler Affidavit, Exhibit A (emphasis supplied).) Carol Crocker

was hired for the position based on Tyler's assessment that she was

the most qualified candidate.[72]

### 10. **Human Resource Generalist - Engineering (Chrysler Technical Center)**

Plaintiff also self-nominated himself for this position during

1996. The Open Position Notice listed as the required

skills/competencies:

> <u>Skills/Competencies - Requirements</u>:
> <u>Must have strong P.C. skills</u> (Wordperfect, Lotus 123,
> Freelance, CC: Mail, Orgplus, Access) <u>and Mainframe</u>
> <u>computer skills</u> (SEAS, Infoctr, IPP, Hewlett Packard).
> Knowledge of Impromptu is a plus.

(Culton Affidavit, Exhibit A (emphasis supplied).) Hiring manager

Ronald D. Culton reviewed each Personal History Record he received.

Plaintiff was not selected for an interview because, in Culton's

judgment, his credentials did not equal those of other self-

nominated candidates.[73] Plaintiff did not possess the required

computer skills listed in the Open Position Notice. Culton is not

---

[72] *Id.* at ¶ 4. Tyler's reasons for selecting Carol Crocker were: Most Qualified. Extensive H.R. experience covering compensation, labor relations, placement & development. She has had assignments at the plant, group and corporate levels, has worked in both the U.S. and Canada, and has a working knowledge of hourly UAW employment activities. *Id.*, Exhibit C.

[73] Culton Affidavit, ¶¶ 1, 3.

24

award of plaintiff's age.[74]   Culton chose Janice Shock for the
position based on his assessment that she was the best available
candidate.[75]

### 11. Personnel Program Specialist - Chrysler Technical Center

Hiring manager Thomas Willoughby automatically eliminated from
consideration any self-nominated candidate who received a 1995
performance appraisal rating of Contributor or lower.[76]   Plaintiff
received a Contributor rating in 1995.   Willoughby also considered
only candidates from Chrysler's "mainstream" facilities.   This
criteria also eliminated plaintiff, since Pentastar Electronics,
Inc., was not considered a part of Chrysler's "mainstream."[77]
Willoughby used this initial criteria for all four positions he was
in charge of selecting.[78]

The Open Position Notice for this position listed the
following skills/competencies requirements:   "[m]ust have strong
computer skills: SEAS and Lotus experience preferred."   (Willoughby

---

[74] *Id.* at ¶ 5.

[75] *Id.* at ¶ 4.

[76] Willoughby Affidavit, ¶¶ 1-2.   Willoughby stated in his affidavit that
he only considered candidates who rated Significant Contributor or above.

[77] *Id.* at ¶ 2.

[78] Thomas Willoughby served as hiring manager for the following positions:
Personnel Program Specialist - Chrysler Technical Center; Human Resource Manager
- Indiana Transmission Plant; Human Resource Manager - Mack Avenue Engine Plant;
and Human Resource Manager - Huntsville Electronics Division Complex.   Willoughby
is not aware of plaintiff's age.   Willoughby Affidavit, ¶ 12.

25

Affidavit, Exhibit A.)  Plaintiff thus did not meet the minimum

requirements for consideration.

Willoughby ultimately selected Michelle Puente Cook for the

position. Cook is of Hispanic heritage, which Willoughby admittedly

took into consideration.[79]  He nonetheless gave the following

business reasons for her selection:

> Michelle is knowledgeable and well-rounded; experiences
> in L/R, compensation benefits and organizational
> development have prepared her for a position like this.
> She has more experience in [organizational development]
> than other candidates and the Mexican operations are
> developing proposals that will require aptitude in this
> competence to complete their restructuring.

(Willoughby Affidavit, Exhibit D.)

### 12.  Human Resource Manager - Indiana Transmission Plant

Thomas Willoughby also served as hiring manager for this

position.  He used the same criteria for initially eliminating

candidates.[80]  Plaintiff, therefore, was eliminated automatically

from consideration.

Willoughby worked with plant manager Ron Lightcap in selecting

candidates to interview.[81]  Lightcap reviewed the background of

---

[79] *Id.* at ¶ 5.

[80] *Id.* at ¶¶ 1-2.

[81] Each Human Resource Manager Open Position Notice, Willoughby was in
charge of hiring listed the same minimum requirements:

Education Training:
Bachelors degree required, preferably in business with a
concentration in human resources.  Advance degree preferred.

26

candidates and selected individuals to be interviewed, paying

particular attention to those candidates familiar with the local

union at Kokomo Transmission plant, and those who had some exposure

to union relations and progressive agreements.[82]

The Indiana Transmission plant was a new facility in 1996,

with local union agreements yet to bet negotiated. Willoughby and

Lightcap therefore preferred someone who had established

credibility with UAW Local Union 685.[83]

Following the interviews, Lightcap recommended James Mullins[84]

for the position based on his "established trust and respect with

the people that will be involved in the negotiations."[85]   James

---

Experience:
10 yrs exp required particularly in union relations and local
contract negotiations.   Experience in HR programs, safety &
compensation preferred.   HR supervisory experience & 5 years MFG
plant experience required.

Skills/Competencies:
Must be able to work with all levels of management and foster good
working relationship with union leadership.   Excellent
written/verbal communication skills required.   Exceptional
leadership and organizational skills required.

Other:
Understanding of Chrysler Operating System (COS) preferred. Must be
able to relocate and be involved in local community as a Chrysler
representative.

Id., Exhibits E, I, L.

[82] Id. at ¶ 7.

[83] Id.

[84] See note 27, supra and accompanying text. At the time of his selection,
James Mullins was serving as Labor Relations Supervisor at Chrysler's Kokomo
Transmission Plant.

[85] Willoughby Affidavit, Exhibit F.

27

Mullins had worked his entire career in labor relations at the
Kokomo Transmission plant. He also had extensive exposure and
experience with Local Union 685.[86] Willoughby hired Mullins for
this position based on Lightcap's recommendation, in addition to
his qualifications for the position.[87] Mullins was born April 12,
1949, which makes him six years younger than plaintiff.[88]

### 13. Human Resource Manager - Mack Avenue Engine Plant

Thomas Willoughby was in charge of selecting a candidate for
this position as well.[89] He ultimately chose Kenneth McLain as
Human Resource Manager based on his experience as Human Resource
Manager in Chrysler's Warren Stamping and Detroit Axle plants.[90]
McLain also had experience negotiating both local, national,
salary, and hourly contracts.[91] McLain is approximately two years
younger than plaintiff, being born on June 18, 1945.[92]

### 14. Human Resource Manager - Huntsville Electronics Division Complex

The Human Resources Development Committee directed Willoughby
to select Margaret Childs-Watson as Human Resource Manager of this

---

[86] *Id.*

[87] *Id.* at ¶ 7.

[88] Wright Deposition, Exhibit 5.

[89] Willoughby Affidavit, at ¶¶ 1-2; *see* note 81, *supra.*

[90] *Id.* at ¶ 9.

[91] *Id.*, Exhibit K.

[92] Wright Deposition, Exhibit 5.

28

Huntsville facility.[93]  Ms. Watson was born on January 21, 1952,

making her nine years younger than plaintiff.[94]  At the time of her

selection, Watson was servicing hourly and salary agreements for

several of Chrysler's plant location as a functional human resource

manager.[95]

### III. DISCUSSION

Congress passed the Age Discrimination in Employment Act

(ADEA) in 1967 to protect older Americans from discrimination in

the workplace.  *Trans World Airlines, Inc. v. Thurston*, 469 U.S.

111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985); *see* 29 U.S.C. §§ 621(b),

623.  29 U.S.C. § 623 provides in pertinent part:

> (a)  **Employer practices**
> It shall be unlawful for an employer —
>> (1)  to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
>> (2)  to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
>> (3)  to reduce the wage rate of any employee in order to comply with this chapter.

---

[93] Willoughby Affidavit, at ¶ 11; *see* note 81 *supra*.

[94] Wright Deposition, Exhibit 5.

[95] Willoughby Affidavit, at ¶ 11.

29

. . .

**(f)   Lawful    practices;    age    an    occupational**
**qualification;  other  reasonable  factors;  laws  of**
**foreign  workplace;  seniority  system;  employee**
**benefit plans; discharge or discipline for good**
**cause**
It shall not be unlawful for an employer,
employment agency, or labor organization —

> (a)  to take any action otherwise prohibited
> under subsections (a), (b), (c), or (e)
> of this section where age is a bona fide
> occupational  qualification  reasonably
> necessary to the normal operation of the
> particular  business,  or  where  the
> differentiation is based on reasonable
> factors other than age, or where such
> practices  involve  an  employee  in  a
> workplace  in  a  foreign  country,  and
> compliance with such subsections would
> cause such employer, or a corporation
> controlled by such employer, to violate
> the laws of the country in which such
> workplace is located ...

(Emphasis supplied.)

## A.   Disparate Impact Claims Under the ADEA

Because  plaintiff  does  not  allege  defendant  intended  to
discriminate among its employees because of age, his first claim
falls under a disparate impact theory of liability.[96]  The issue
whether a disparate impact theory of employment discrimination is
cognizable under the ADEA is somewhat of an open question.  The

---

[96] Wright Deposition at 65, 278.  The court notes plaintiff sought to amend
his complaint on July 20, 1998, adding a claim for disparate impact under the
ADEA.  (Document No. 10.)  The court, however, struck this amendment by order
entered August 27, 1998.  (Document No. 13.)

30

Supreme Court observed in *Hazen Paper Company v. Biggins*, 507 U.S.
604, 610, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993), that it had
"never decided whether a disparate impact theory of liability is
available under the ADEA."[97] Justice Kennedy's concurrence added:
"[a]s the Court acknowledges, ... we have not yet addressed the
question whether such a [disparate impact] claim is cognizable
under the ADEA, and there are substantial arguments that it is
improper to carry over disparate impact analysis from Title VII to
the ADEA." *Id.* at 618, 113 S.Ct. at 1710 (Kennedy, J.,
concurring).[98]

In the wake of the *Hazen Paper* decision, several circuits have
revisited the issue and concluded disparate impact claims are not

___

[97] The Court in *Hazen Paper* set forth the differences between "disparate
treatment" and "disparate impact" theories of liability:

> Disparate treatment ... is the most easily understood type of
> discrimination. The employer simply treats people less favorably
> than others because of their race, color, religion [or other
> protected characteristics.] Proof of discriminatory motive is
> critical, although it can in some situations be inferred from the
> mere fact of differences in treatment. ...
>
> [C]laims that stress disparate impact [by contrast] involve
> employment practices that are facially neutral in their treatment of
> different groups but that in fact fall more harshly on one group
> than another and cannot be justified by business necessity. Proof
> of discriminatory motive ... is not required under a disparate
> impact theory.

*Hazen Paper*, 507 U.S. at 609, 113 S.Ct. at 1705 (internal quotations omitted).
[98] The Chief Justice and Justice Thomas joined in Justice Kennedy's
concurrence.

31

cognizable under the ADEA. The most recent circuit to make such a determination is the First Circuit in *Mullin v. Raytheon Company*, 164 F.3d 696 (1st Cir. 1999). The *Mullin* court initially focused on the statutory language of the ADEA and Title VII, pointing out similarities as well as differences. The court pointed to 29 U.S.C. § 623(a)(1), which makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's age." The *Mullin* court interpreted this language to include a requirement of intentional discrimination. The court, however, pointed out that Title VII included parallel language and the Supreme Court had concluded "almost three decades ago that such language encompassed a theory of liability based on disparate impact." *Mullin*, 164 F.3d at 700.

The *Mullin* court then looked to the Supreme Court's analysis in *Hazen Paper* where, in writing for a unanimous Court, Justice O'Connor declared:

> "[d]isparate treatment ... captures the essence of what Congress sought to prohibit in the ADEA." Congress passed the ADEA due to "its concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes." Consequently, the rationale that undergirds the statute is inapposite

32

in instances where the employment decision is "wholly motivated by factors other than age, ... even if the motivating factor is correlated with age."

*Mullin*, 164 F.3d at 700 (quoting *Hazen Paper*, 507 U.S. at 610-11, 113 S.Ct. at 1701)(internal citations omitted). Because disparate impact claims encompass the precise scenario Justice O'Connor described — *i.e.*, the employment actions at issue are grounded in factors other than a protected characteristic, but fall more harshly upon individuals within the protected group — the *Mullin* court noted "the inescapable implication of [Justice O'Connor's] statements is that the imposition of disparate impact liability would not address the evils that Congress was attempting to purge when it enacted the ADEA." *Mullin*, 164 F.3d at 700-01.

The *Mullin* court also was persuaded by three other considerations that a disparate impact theory is not a valid claim of liability under the ADEA.   The court first considered the textual and structural differences between the ADEA and Title VII, in addition to the similarities between the ADEA and the Equal Pay Act.[99]   In contrast to Title VII's broadly inclusive prohibition against gender-based discrimination, both the ADEA and the Equal Pay Act contain similar language permitting an employer to utilize

---

[99] 29 U.S.C. § 206(d)

33

factors other than age or gender as grounds for employment-related decisions that differentially impact members of the protected class.[100] The Supreme Court in *County of Washington v. Gunther*, 452 U.S. 161, 170, 101 S.Ct. 2242, 2248, 68 L.Ed.2d 751 (1981), concluded that the pertinent language contained in the Equal Pay Act "has been structured to permit employers to defend against charges of discrimination where their pay differentials are based on a bona fide use of 'other factors other than sex'." In accord with the Supreme Court's conclusion concerning the Equal Pay Act, the *Mullin* court also opined that the exception contained in 29 U.S.C. § 623(f)(1) effected a similar limitation on the type of claims that are permitted under the ADEA.

The second factor considered by the *Mullin* court was the legislative history of the ADEA. The court pointed out that the report by the Secretary of Labor to Congress entitled *The Older American Worker: Age Discrimination in Employment* (1965)(the Report) distinguished between "arbitrary discrimination" based on age (disparate treatment) and other institutional arrangements that

---

[100]   29 U.S.C. § 623(f)(1) provides in pertinent part: [i]t shall not be unlawful for an employer ... to take any action otherwise prohibited ... where the differentiation is based on reasonable factors other than age." 29 U.S.C. § 206(d)(1) of the Equal Pay Act contains similar language: "[n]o employer having employees subject to any provisions of this section shall discriminate ... on the basis of sex ... except where such payment is made pursuant to ... (iv) a differential based on any other factor other than sex ..."

34

have a disproportionate effect on older workers (disparate impact).
The Report recommended that arbitrary discrimination be statutorily
prohibited, but that systematic disadvantages be addressed through
educational programs and institutional restructuring.   Report at
21-25.   The *Mullin* court concluded that a reading of the ADEA
indicates that Congress only intended to proscribe intentional
discrimination.   *Mullin*, 164 F.3d at 703.

     The final factor that persuaded the *Mullin* court pertained to
Congress' 1991 Amendments to Title VII.     Those amendments
explicitly provided for actions based upon disparate impact.   *See*
Pub. L. No. 102-166, § 105, 105 Stat. 1071, 1074-75 (1991).   In
contrast, Congress also amended the ADEA, but failed to create a
corresponding disparate impact cause of action.   *See, e.g., id.* at
§ 115, 105 Stat. at 1079.   The *Mullin* court considered the absence
highly probative of Congress' intent, since both Title VII and the
ADEA were undergoing revisions "at the same time by the same
committees and in the same bill."   *Mullin,* 164 F.3d at 703.
(citations omitted.)

     Four other circuits have either held that disparate impact
claims are not a proper theory of liability under the ADEA, or
doubted the viability of such a claim.   *See DiBiase v. Smithkline*

35

*Beecham Corporation*, 48 F.3d 719, 732 (3rd Cir. 1995) ("[I]n the wake of *Hazen Paper*, it is doubtful that traditional disparate impact theory is a viable theory of liability under the ADEA."); *Lyon v. Ohio Education Association and Professional Staff Union*, 53 F.3d 135, 140 n.5 (6th Cir. 1995) ("There is considerable doubt as to whether a claim of age discrimination may exist under a disparate-impact theory, and the Court declined to confront the issue in *Hazen Paper*."); *Blackwell v. Cole Taylor Bank*, 152 F.3d 666, 672 (7th Cir. 1998) ("[D]isparate impact is not, at least in this circuit, a permissible theory of violation of the ADEA."); *Ellis v. United Airlines, Inc.*, 73 F.3d 999, 1009 (10th Cir.) ("Thus, policy considerations add to our analysis of precedent and the ADEA's text, structure, purpose, and legislative history, and confirm our ultimate holding that plaintiffs cannot bring a disparate impact claim under the ADEA."), *cert. denied*, 517 U.S. 1245, 116 S.Ct. 2500, 135 L.Ed.2d 191 (1996).

Four circuits have adopted a contrary position. The Second Circuit, relying on pre-*Hazen Paper* precedent, said: "[a]lthough the Supreme Court has not decided whether a disparate impact claim could be made under the ADEA, in *Maresco*, we held that disparate impact claims can be made under the ADEA. ... Therefore, despite

36

the [defendant's] argument to the contrary, plaintiffs can make out a disparate impact claim under the ADEA." *District Council 37, American Federation of State, County & Municipal Employees, AFL-CIO v. New York City Department of Parks and Recreation*, 113 F.3d 347, 351 (2d Cir. 1997) (citing *Maresco v. Evans Cosmetics, Division of W.R. Grace & Co.*, 964 F.2d 106, 115 (2d Cir. 1992)).

The Ninth Circuit also based its decision to allow disparate impact claims under the ADEA on pre-*Hazen Paper* precedent. In *Mangold v. California Public Utilities Commission*, 67 F.3d 1470, 1474 (9th Cir. 1995), the court said that "existing Ninth Circuit precedent approves of a disparate impact theory under the ADEA." (citing *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990); *see also EEOC v. Local 350*, 998 F.2d 641, 648 n.2 (9th Cir. 1993)).

The Eighth Circuit, however, relied upon post-*Hazen Paper* precedent in determining the viability of such claims. In *Smith v. City of Des Moines, Iowa*, 99 F.3d 1466, 1470 (8th Cir. 1996), the court said that:

> [o]ur opinion in *Houghton*, however, postdated *Hazen Paper*, and continued to recognize the viability of disparate impact actions under the ADEA. ... As a result, even if we believed that *Hazen Paper* cast doubt on the validity ... [of such claims], *Houghton* represents the

37

law of this Circuit, which we follow absent a "clear
indication" that it has been overruled.

(citing *Houghton v. SIPCO, Inc.*, 38 F.3d 953, 958-59 (8th
Cir.1994)).

The District of Columbia Circuit in *Koger v. Reno*, 98 F.3d
631, 639 (D.C. Cir. 1996), assumed "without deciding that disparate
impact analysis applies to age discrimination claims." (The *Koger*
court did not resolve the issue, because it held that the plaintiff
failed to show the employment practice at issue caused the alleged
adverse employment action.)

The Eleventh Circuit has not yet directly addressed the
cognizability of disparate impact claims under the ADEA.   The
Eleventh Circuit did allow the plaintiff to assert a claim of age
discrimination under a disparate impact theory in *MacPherson v.
University of Montevallo*, 922 F.2d 766, 771 (11th Cir. 1991), but
*MacPherson* was decided on January 30, 1991, whereas the Civil
Rights Act of 1991 was not passed by Congress until November 21,
1991.

Judge William Acker, Senior United States District Judge for
the Northern District of Alabama, was nevertheless persuaded by the
Tenth Circuit's decision in *Ellis v. United Airlines, Inc.*, 73 F.3d
999 (10th Cir.), *cert. denied*, 517 U.S. 1245, 116 S.Ct. 2500, 135

38

L.Ed.2d 191 (1996), that disparate impact "is not cognizable under the ADEA." *Davidson v. Quorum Health Group, Inc.*, 1 F. Supp. 2d 1321, 1326 (N.D. Ala. 1997).

In summary, since *Hazen Paper*, the majority of circuits and another judge of this court have held that the ADEA does not countenance disparate impact claims. Those circuits which have held otherwise have made such determinations without discussing either *Hazen Paper* or other circuit decisions. Therefore, the courts deciding the issue against viability of disparate impact claims provide strong, persuasive authority encouraging this court to believe the Eleventh Circuit ultimately shall reach the same conclusion.

Nevertheless, even if the Eleventh Circuit were to allow disparate impact claims under the ADEA, plaintiff still must prove that a "facially neutral employment practice, which is unjustified by a legitimate business goal of the employer, has a disproportionately adverse impact on the members of a protected group." *MacPherson*, 922 F.2d at 771 (citing *Wards Cove Packing Co., Inc., v. Atonio*, 490 U.S. 642, 655-56, 109 S.Ct. 2115, 2124, 104 L.Ed.2d 733 (1989)). To make out a prima facie case under a disparate impact theory, "a plaintiff must isolate and identify

39

'the specific employment practices that are allegedly responsible

for any observed statistical disparities.'" *MacPherson*, 922 F.2d at

771 (quoting *Wards Cove*, 490 U.S. at 656, 109 S.Ct. at 2124.). The

Supreme Court in *Wards Cove* said with regard to the importance of

causation as a part of the prima facie case that: "a plaintiff must

demonstrate that it is the application of a specific or particular

employment practice that has created the disparate impact under

attack." *Wards Cove*, 490 U.S. at 657, 109 S.Ct. at 2124. The

Supreme Court also said in *Watson v. Fort Worth Bank and Trust*, 487

U.S. 977, 994, 108 S.Ct. 2777, 2789, 101 L.Ed.2d 827 (1988), that

"the plaintiff in our view is responsible for isolating and

identifying the specific employment practices that are allegedly

responsible for any observed statistical disparities." The *Watson*

Court went further to require:

> [o]nce the employment practice at issue has been
> identified, causation must be proved: that is, the
> plaintiff must offer statistical evidence of a kind and
> degree sufficient to show that the practice in question
> has caused the exclusion of applicants for jobs or
> promotions because of their membership in a protected
> group. Our formulations, which have never been framed in
> terms of any rigid mathematical formula, have
> consistently stressed that statistical disparities must
> be sufficiently substantial that they raise such an
> inference of causation.

40

*Id.*, 108 S.Ct. at 2789. Once plaintiff has established a prima facie case, the burden shifts to the employer to produce evidence which would justify its use of the challenged practice. The employer's burden is one of production while — as is the case for disparate treatment claims — the ultimate burden of persuasion remains at all times with the plaintiff. *Id.* at 659, 109 S.Ct. at 2126.

Plaintiff in the instant action identified a specific employment action which he alleges disproportionately impacted older workers: *i.e.*, the unavailability of access to Chrysler's Internal Placement Process to all Chrysler Technologies employees between February and June of 1996. Plaintiff, however, failed to produce any statistical evidence to show how the "freeze" caused a disproportionate impact upon Chrysler's older employees. Plaintiff admitted during his deposition that no statistical expert had reviewed the numbers of employees affected by the freeze.[101] Plaintiff makes only the conclusory assertion that the "freeze" disproportionately discriminated against employees over the age of 40.[102] He also admitted that, on the date he filed his EEOC charge, he had no information "other than [his] gut feeling ... that [his]

---

[101] Wright Deposition at 92.
[102] *Id.* at 64.

41

age was a factor."[103]  Plaintiff accordingly failed to make a prima

facie showing of age discrimination under a disparate impact theory

of recovery, and it thus is not necessary to examine defendant's

business justifications for its employment actions.  Defendant's

motion for summary judgment as to plaintiff's disparate impact

claims is due to be granted.

**B.   Disparate Treatment ADEA Claim**

In ADEA cases, the plaintiff has the ultimate burden of

proving that age was a determinative factor in the employer's

adverse employment decision.  See, e.g., Verbraeken v. Westinghouse

Electric Corporation, 881 F.2d 1041, 1045 (11th Cir. 1989).

Initially, the plaintiff must establish that age was a determining

factor with direct evidence,[104] circumstantial evidence, or

statistical evidence.  E.g., Alphin v. Sears, Roebuck & Company,

940 F.2d 1497, 1500 (11th Cir. 1991).  Plaintiff presents no direct

evidence[105] of discrimination, nor does he present any statistical

---

[103] Id. at 123-24.

[104] "Only the most blatant remarks, whose intent could only be to discriminate on the basis of age constitute direct evidence."  Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1226 (11th Cir. 1992).

[105] Plaintiff does not present any evidence that a decisionmaker for Chrysler made any comments pertaining to his age.  Plaintiff does allege that his supervisor, John Stellman, alluded to his age when discussing the possibility of plaintiff receiving an early retirement option, and the fact that retirement might be a good option for plaintiff.  Wright Deposition at 102-03.  Even so, plaintiff points out in his brief, none of the hiring managers for the fourteen positions consulted Stellman in making their decisions not to interview or select plaintiff.  Plaintiff's brief at 10.  Therefore, any comments allegedly made by

42

evidence.[106] The court, therefore, will proceed with the analysis
for circumstantial evidence.

To avoid summary judgment on an age discrimination claim, a
plaintiff relying on circumstantial evidence must comply with the
framework created for disparate treatment claims defined by the
Supreme Court in a series of decisions rendered over a period of
twenty years, beginning with *McDonnell Douglas Corporation v.
Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), then
elaborated in *Texas Department of Community Affairs v. Burdine*, 450
U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and finally
elucidated in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113
S.Ct. 2742, 125 L.Ed.2d 407 (1993). That now familiar analytical
framework has three steps which do not require elaboration here —
except to observe that even though the *McDonnell Douglas* trilogy
involved discrimination claims under Title VII, a variant of the
analysis applies to claims under the ADEA as well. *See Mitchell v.*

Stellman had no impact on any of the employment decisions at issue in this case.

[106] There is no statistical evidence in this case, only numbers. Plaintiff
purports to present statistical evidence of discrimination by identifying one
group of employees who were laid off because of contract difficulties. Plaintiff
admitted in his deposition testimony that he had no evidence or reason to believe
that age was a factor in the group being laid off. Wright Deposition at 77, 80-
81, 95-98. Plaintiff also did not reduce any numbers he gathered to any relevant
or useful format for comparison. "Such raw figures are seldom useful because
they provide no framework for analysis." Davidson v. Quorum Health Group, Inc.,
1 F. Supp. 2d 1321, 1325 (N.D. Ala. 1997) (quoting Langston v. Carraway Methodist
Hospitals of Ala., 840 F. Supp. 854, 863 (N.D. Ala. 1993) (quoting Gilty v.
Village of Oak Park, 919 F.2d 1247, 1352 N.8 (7th Cir. 1990))).

43

*Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 566 (11th Cir. 1992); *Alphin v. Sears, Roebuck & Company*, 940 F.2d 1497, 1500 (11th Cir. 1991). The goal of the three-step process is that of "progressively ... sharpen[ing] the inquiry into the elusive factual question of intentional discrimination." *Hicks*, 509 U.S. at 506, 113 S.Ct. at 2746 (*quoting Burdine*, 450 U.S. at 255 n.8, 101 S.Ct. at 1094 n.8).

## C. Plaintiff's Prima Facie Case and Defendant's Legitimate Nondiscriminatory Reasons For Its Employment Actions

In order to make out a prima facie case for an ADEA violation in a case involving discharge, demotion, or failure to hire, the plaintiff must show that he:

> (1) was a member of the protected age group of persons between the ages of forty and seventy; (2) that he was subject to adverse employment action; (3) that a substantially younger person filled the position that he sought or from which he was discharged; and (4) that he was qualified to do the job for which he was rejected.

*Turlington v. Atlanta Gas Light Company*, 135 F.3d 1428, 1432 (11th Cir. 1998) (citing *O'Connor v. Consolidated Coin Caterers Corporation*, 517 U.S. 308, 313, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996); *Jameson v. Arrow Co.*, 75 F.3d 1528, 1531 (11th Cir. 1996)). Summary judgment is appropriate if plaintiff fails to satisfy any one of the elements of a prima facie case. "For

44

example, summary judgment is appropriate against a plaintiff who fails to demonstrate that he was qualified to perform the position for which he was rejected." *Turlington*, 135 F.3d at 1433 (citing *Baker v. Sears, Roebuck & Co.*, 903 F.2d 1515, 1520-21 (11th Cir. 1990)).

Plaintiff as part of his prima facie case must show that a "substantially younger person" filled the position that he sought. The Seventh Circuit has held that "substantially younger means at least a ten-year age difference; any age disparity less than ten years is presumptively insubstantial." *See Fisher v. Wayne Dalton Corporation*, 139 F.3d 1137, 1141 (7th Cir. 1998) (quoting *Kariotis v. Navistar International Transportation Corporation*, 131 F.3d 672, 676 n.1 (7th Cir. 1997) (internal quotations omitted)); *see also O'Connor v. Consolidated Coin Caterers Corporation*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

Larry Wright was 53 years of age when the alleged ADEA violations occurred. Thus, Wright was in the group protected by the ADEA. He suffered an adverse employment action by not being chosen for any of the fourteen positions for which he self-nominated himself: thereby rendering him unable to remain a Chrysler employee upon the sale of Pentastar Electronics, Inc.

45

The third and fourth elements of plaintiff's prima facie case
are in dispute and, therefore, will be dealt with separately for
each position along, with the legitimate nondiscriminatory reasons
articulated by defendant for its actions.

As an initial matter, however, the court notes that plaintiff,
in his brief in opposition to summary judgment, states: "the Court
can simply look to the depositions of Larry Wright, John Stellman,
George Johnson, and Grey Purtell, and the exhibits to those
depositions, to see that this case must proceed to trial."
(Plaintiff's brief at 3.)  This court is not obligated to search
the entire record for a genuine issue of material fact.  Rather,
the party opposing summary judgment must direct the court's
attention to evidence which demonstrates the existence of triable
issues.  See e.g., Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 259
(8th Cir. 1996)("A district court is not required to speculate on
which portion of the record the nonmoving party relies, nor is it
obligated to wade through and search the entire record for some
specific facts that might support the nonmoving party's claim");
Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir.
1989)("The trial court no longer has the duty to search the entire
record to establish that it is bereft of a genuine issue of

46

material fact"); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)("Appellant's failure to designate and reference triable facts was, in light of the language of Rule 56(c) and governing precedent, fatal to its opposition"); *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988)(noting that an opposition brief which failed to identify and reference triable facts was insufficient to preclude grant of properly supported summary judgment motion); *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (rejecting notion that "the entire record must be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered").

### 1. Personnel Program Administrator - MOPAR

As previously observed, the Open Position Notice for this position listed as one of the minimum requirements for consideration: "[k]nowledge of computer programs and thorough knowledge of SEAS is required. Excellent PC skills including Lotus and Work Perfect."[107] Plaintiff admitted during his deposition that he was not a computer expert. He could write letters using Word Perfect, but could not use Lotus even though he had taken a class

---

[107] Benit Affidavit, Exhibit A.

47

205 551 0741    P.049/066

about the computer program.[108] By plaintiff's own admission, he did not meet minimum requirements for the MOPAR Personnel Program Administrator position. Thus, plaintiff failed the fourth requirement for a prima facie ADEA case.

Although plaintiff failed to make a prima facie showing, defendant offers legitimate, nondiscriminatory reasons for its employment decision. Julie McIntosh was selected for this position, because of her past experience as an administrative assistant. She also had extensive computer training beyond the minimum skills required.[109]

**2. Personnel Program Specialist - Chrysler Financial Center**

This position also required as part of its minimum requirements: "PC proficiency." Because strong or specialized computer skills were not required, however, this court concludes that plaintiff met the minimum qualifications for selection. Plaintiff, therefore, satisfied the fourth element of a prima facie case.

Walt Bartels, the candidate ultimately selected for the position, was born in 1968, which makes him approximately 25 years

---

[108] Wright Deposition at 16-17.

[109] Benit Affidavit, Exhibit B, Personal History Record of Julie McIntosh.

48

younger than plaintiff.  Thus, plaintiff also satisfied the third
prima facie element.

Defendant now has the burden of producing legitimate,
nondiscriminatory reasons for its employment decision.  Defendant
meets this burden by showing that each candidate chosen for
interview received higher performance appraisal ratings during 1995
than plaintiff.[110]  Defendant further points out that the Personnel
Program Specialist position had been used as part of Chrysler's
Advanced Degree Development Program for many years.  Walter Bartels
was an Advanced Degree Development Program candidate when he was
placed in the position.  It is undisputed that plaintiff was not.
Defendant, therefore, has met its burden of production, effectively
rebutting the presumption of discrimination raised by plaintiff's
prima facie case.

### 3.    Personnel Program Administrator - Kokomo Transmission Plant

The Open Position Notice for Personnel Program Administrator -
Kokomo, contained the following minimum requirement: "[m]ust be
computer literate."    As stated with regard to the previous
position, because neither strong nor specialized computer skills
were required, and plaintiff meets all other minimum requirements,

---

[110] *See* note 23, *supra*.

49

this court concludes that plaintiff was qualified for selection. He, therefore, has satisfied the fourth element of his prima facie age discrimination case.

Plaintiff also satisfies the third element, because the candidate who filled the position was born on September 18, 1964, which makes him substantially younger than plaintiff.

Defendant, however, produces legitimate, nondiscriminatory reasons for its selection. Brian Dilley had three years experience with Shell Oil Co., and held a master's degree in labor, as well as a law degree from Michigan State University. Dilley also was selected and recommended by the Human Resource Development Committee.

### 4. Employee Benefits Administrator - Windsor, Ontario Assembly

Plaintiff admits he had never worked in Canada, nor did he possess a Canadian work visa.[111] He also admits that, while not a posted requirement, Canadian experience would be beneficial for such a position.[112]   The Windsor, Ontario Open Position Notice listed as an experience requirement: "Canadian Workers Compensation and plant manufacturing experience is an asset. ..."[113]   Plaintiff,

---

[111] Wright Deposition at 116.

[112] *Id.* at 117.

[113] Krueger Affidavit, Exhibit A.

50

therefore, failed to satisfy the fourth element of a prima facie case.

Nevertheless, defendant offers legitimate nondiscriminatory reasons for its candidate choice. Hiring manager A.J. Krueger reviewed the Personal History Record of each self-nominated candidate. He did not select plaintiff to interview because plaintiff lacked any Canadian work experience. Mr. Krueger selected Dean Testani instead based on Testani's Canadian educational and work experience.[114]

5.  **Human Resource Manager - Evart, Michigan, Glass Plant**

Plaintiff met the minimum requirements for the Human Resource Manager position at Chrysler's Evart Glass facility. The position also was filled by a person 26 years younger than plaintiff.[115] Plaintiff, therefore, established a prima facie ADEA violation, raising a presumption of discrimination.

Defendant effectively rebuts this presumption by offering numerous legitimate nondiscriminatory reasons for its candidate selection. Defendant points out that, at the time this position

---

[114] Krueger Affidavit, ¶¶ 3-4.

[115] Wright Deposition, Exhibit 5.  The court notes, the Evart Glass Human Resource Manager position is the only position which plaintiff self-nominated that would have been a promotion and was filled by a person substantially younger.  Plaintiff's band rating at the time was 92.  The Evart Glass position was rated at band 93.

51

became available, Chrysler was in the process of selling the Evart Glass plant. Hiring manager Evilio Bertolozzi, therefore, was not inclined to place a non-Evart employee in the position since the facility would not be a part of Chrysler in the near future. As noted before, plaintiff stated in his deposition that he self-nominated himself for the fourteen positions discussed herein, in an effort to remain a Chrysler employee after Pentastar Electronics, Inc., was sold.[116] Receiving the Evart Glass position would have been contrary to plaintiff's motives. Notwithstanding, Russ Fatum was selected by Bertolozzi with the help of human resource manager Ruth Moore based on his past experience with Chrysler. Mr. Fatum had been a Chrysler employee in its ITT Body Systems facility, also located in Evart, Michigan. This facility was sold to Textron.[117] Defendant, therefore, has rebutted the presumption of unlawful age discrimination created by plaintiff's prima facie case.

## 6. Health/Safety Supervisor - St. Louis Assembly South Minivan Plant

This position required that a candidate have "five years of professional experience in occupational safety or engineering," in

---

[116] Wright Deposition at 115.

[117] Bertolozzi Affidavit, ¶ 4, Exhibits B, C; Wright Deposition, Exhibit 5.

52

addition to being either "certified or a candidate for certification by the Board of Certified Safety Professionals."[118] Plaintiff admits that he does not possess any of these requirements:

Q. Okay. If the open position notice indicated that you were required to either have or be a candidate for a specific safety certification, would that - - would [you] have been qualified for that job?

A. I could be certified. I am not a certified safety professional. I could be.

Q. That wasn't my question. If the open position notice says you either are required to already be certified or be a candidate for the certification, would you have been qualified at the time you bid?

A. No.

(Wright Deposition at 124-25.) As such, plaintiff failed to establish a prima facie case.

Although not required, defendant presents legitimate nondiscriminatory reasons for its selection. Defendant presents evidence that hiring manager, P. Glen Shagena, reviewed plaintiff's Personal History Record, but did not select him to interview since he did not meet the minimum requirements listed in the Open Position Notice. Mr. Shagena selected an outside candidate, Thomas

---

[118] Shagena Affidavit, Exhibit A.

53

F. Holly, based on his status as a Certified Safety Professional, in addition to more than five years of safety experience.

### 7.   Labor Relations Supervisor - St. Louis Assembly South Minivan Plant

Plaintiff satisfied the minimum requirements listed in the Open Position Notice for the St. Louis Labor Relations Supervisor position.  The position, however, was filled by Steve Politakis, who is only three years younger than plaintiff (date of birth: December 11, 1946).  Thus, plaintiff fails to raise a presumption of age discrimination by not meeting the third element of his prima facie case.

Defendant, nonetheless, offers nondiscriminatory reasons for its decision not to select plaintiff although he did meet the minimum requirements.  Steve Politakis was highly recommended, as well as having labor relations experience at another of Chrysler's St. Louis facilities.

### 8.   Human Resource Manager - Newark

Defendant admits in its brief that "plaintiff arguably satisfied the minimum requirements as stated in the Open Position Notice ..."[119]  Plaintiff, however, does not satisfy the third element of his prima facie case since the position was not filled

---

[119] Defendant's brief in support of motion for summary judgment at 35.

54

by someone substantially younger.    Rather, defendant selected Archie Williams, who was only six years younger than plaintiff. Therefore, plaintiff fails to state a prima facie case of age discrimination.

Defendant also offers several legitimate nondiscriminatory reasons for choosing Archie Williams instead of plaintiff. Plaintiff had no assembly plant experience with Chrysler, only a limited labor relations background, and had not worked with national UAW agreements. Hiring manager Robert J. Forbes, together with plant manager Jim Wolfe, also considered whether a candidate had worked in a "major" Chrysler facility.    They did not view Pentastar Electronics, Inc., as a "major" facility.    Archie Williams also was recommended by the Newark Plant Human Resources Management Committee.    These reasons would sufficiently satisfy defendant's burden of production, had a showing been necessary.

### 9.    Personnel Administration Supervisor - Warren Truck Assembly Plant

The Open Position Notice for this position required a candidate to be "[f]amiliar with Lotus 1-2-3, WP 6.1, SEAS, TEACS."[120] Although plaintiff readily admits he is not an expert on his personal computer, the court concludes that he is sufficiently

---

[120] Tyler Affidavit, Exhibit A.

55

familiar with such software programs to satisfy the minimum requirements to be considered for the Personnel Administration Supervisor position. Thus, he satisfies the fourth element of his prima facie case. Moreover, the person selected for the position, Carol Crocker, was born November 6, 1964, making her substantially younger than plaintiff, thereby meeting the third prima facie element. Therefore, defendant must set forth some legitimate nondiscriminatory reason for its employment action.

Defendant contends Carol Crocker was selected because she was the most qualified candidate. James Tyler, hiring manager, gave the following reasons for her selection:

> Most Qualified. Extensive H.R. experience covering compensation, labor relations, placement & development. She has had assignments at the plant , group and corporate levels, has worked in both the U.S. and Canada, and has a working knowledge of hourly UAW employment activities.

(Tyler Affidavit, Exhibit C.) Because defendant's burden is one of production only, defendant has sufficiently satisfied its obligation. Plaintiff must now proves defendant's stated reasons are merely pretext for age discrimination.

**10. Human Resource Generalist - Engineering (Chrysler Technical Center)**

The Skills/Competencies requirements listed in the Open Position Notice stated: "[m]ust have strong P.C. skills ... and

56

Mainframe computer skills."[121]   This position required stronger computer skills than plaintiff possessed.   Plaintiff, therefore, does not meet the fourth requirement of his prima facie case.

Ronald D. Culton, hiring manager, stated in affidavit that plaintiff was not chosen for an interview because his qualifications did not equal those of the other self-nominated candidates.   Culton chose Janice Shock to be the Human Resource Generalist based on his conclusion that she was the best available candidate.   The reasons for not selecting plaintiff are sufficient to rebut a presumption of discrimination, had plaintiff presented a prima facie case of age discrimination.

**11. Personnel Program Specialist - Chrysler Technical Center**

Plaintiff fails to make a prima facie showing for this position as well.   One of the criteria for eligibility stated: "[m]ust have strong computer skills; SEAS and Lotus experience preferred."[122]

Even though not required, defendant presents ample nondiscriminatory reasons for not selecting plaintiff.   Hiring manager Thomas Willoughby initially reviewed the list of self-nominated candidates and automatically eliminated any candidate who

---

[121] Culton Affidavit, Exhibit A.

[122] Willoughby Affidavit, Exhibit B.

57

received a performance appraisal rating in 1995 of "Contributor" or below. Because plaintiff received a performance rating of Contributor in 1995, he was eliminated from consideration. Willoughby also considered only those candidates working in Chrysler's "mainstream" facilities, and he did not consider Pentastar Electronics, Inc., to be such. Plaintiff, therefore, was eliminated from consideration early in the selection process, based on his failure to meet both initial criteria.

Willoughby chose Michelle Puente Cook to fill the position. Willoughby based this decision on her labor relations experience, as well as her Hispanic heritage, which Willoughby considered of significant value in dealing with Chrysler's Mexican operations.

These legitimate reasons would have sufficiently rebutted plaintiff's prima facie case, had he established one.

## 12. Human Resource Manager - Indiana Transmission Plant

Plaintiff does not set forth a prima facie showing for the Indiana Transmission Plant, Human Resource Manager position. The position was filled by an individual that was not substantially younger: James Mullins, the candidate chosen, was only six years younger than plaintiff.

Thomas Willoughby used the same initial, screening criteria for eliminating candidates for this position that he had applied to

58

applicants for the Personnel Program Specialist position discussed above. As such, plaintiff was eliminated from consideration during the first stage of the selection process. Willoughby also was aided in his selection by Plant Manager, Ron Lightcap, who reviewed each self-nominated candidate's background, as well as their exposure to union relations and progressive agreements. The Indiana Transmission Plant was a new facility for Chrysler, and the local union agreements had not yet been negotiated. Willoughby and Lightcap therefore were interested in a candidate who possessed an established credibility record with UAW Local Union 685. Plaintiff had no such experience. James Mullins, on the other hand, had extensive experience dealing with Local Union 685. Based on this experience and his background in labor relations at the Kokomo Transmission plant, Lightcap recommended that James Mullins be named Human Resource Manager. Willoughby accepted Lightcap's recommendation.

The legitimate nondiscriminatory reasons set forth by defendant effectively rebut any presumption of discrimination that might have been raised, had plaintiff established a prima facie case.

59

### 13. **Human Resource Manager - Mack Avenue Engine Plant**

Plaintiff failed to establish a prima facie case for this Human Resource position for the same reasons as the position discussed immediately above: i.e., the candidate chosen was not substantially younger than plaintiff. Kenneth McLain was born June 18, 1945; therefore, he is only two years younger than plaintiff.

Had plaintiff established a prima facie case, defendant nonetheless offers nondiscriminatory reasons for its employment decision. Thomas Willoughby was the hiring manager for this position as well. Plaintiff accordingly was eliminated from consideration early in the selection process because of his 1995 performance appraisal rating and the fact that he did not work in one of Chrysler's "mainstream" facilities. Kenneth McLain was chosen for the position based upon his past experience as Human Resource Manager for Chrysler in both the Warren Stamp and Detroit Axle plants. He also had local and national union contract negotiations.

### 14. **Human Resource Manager - Huntsville Electronics Division Complex**

This Human Resource Manager position also was filled by a candidate who was not substantially younger than plaintiff. Margaret Childs-Watson was nine years younger than plaintiff (date

60

of birth: January 21, 1952). Therefore, the third element of plaintiff's prima facie case is not satisfied.

Notwithstanding, defendant presents legitimate nondiscriminatory reasons for its selection of Ms. Watson. Foremost, the Human Resource Development Committee directed Mr. Willoughby to select Ms. Watson for this position. At that time she was the functional human resource manager for several of Chrysler's plants. She was responsible for servicing each plant's hourly as well as salary agreements. In contrast, plaintiff was responsible for only one location: Pentastar Electronics, Inc. Defendant, therefore, would have rebutted plaintiff's prima facie case, had he satisfied the third element.

## D. Plaintiff's Showing of Pretext

Because defendant proffered legitimate nondiscriminatory reasons for its failure to select plaintiff for any of the fourteen positions discussed above, even when plaintiff failed to establish a prima facie case, the burden of persuasion now shifts back to plaintiff. At this third stage of analysis, plaintiff must come forward with evidence sufficient to demonstrate that defendant's stated reasons were not the real reasons for its failure to offer any of the positions. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997), *cert. denied sub nom. Combs v.*

61

*Meadowcraft Co.*, __ U.S. __, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998); *see also Hicks*, 509 U.S. at 507-08, 113 S.Ct. 2747-48.

A plaintiff, however, cannot establish pretext by merely disagreeing with, or questioning an employer's stated reasons for an adverse employment action. "Stated somewhat differently, a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where, as here, the reason is one that might motivate a reasonable employer." Combs, 106 F.3d at 1543.

The Eleventh Circuit also said, in *Elrod v. Sears, Roebuck and Company*, 939 F.2d 1466, 1471 (11th Cir. 1991), that "[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered ... extensive evidence of legitimate, nondiscriminatory reasons for its action." (quoting *Carter v. Miami*, 870 F.2d 578, 585 (11th Cir. 1989)).

Plaintiff's showing of pretext in this case begins and ends with such conclusory allegations. Plaintiff, as evidence of pretext, points to the fact that not all of plaintiff's experience was listed in the chart submitted by defendant to the EEOC.[123] This

---

[123] Wright Deposition, Exhibit 5.

62

court does not agree with plaintiff's assertion; in reality, the chart does not fully list the experience of the candidates who were chosen for each position. Plaintiff also makes the conclusory allegation that the age of some of the candidates chosen, Walt Bartels specifically, creates doubt as to the truthfulness of the defendant's assertion that these candidates were more qualified. Plaintiff also argues the defendant's reasons for its employment decisions have varied over time. "The identification of inconsistencies in an employer's testimony can be evidence of pretext." *Tidwell v. Carter Products*, 135 F.3d 1422, 1428 (11th Cir. 1998) (citing *Bechtel Construction Co. v. Secretary of Labor*, 50 F.3d 926 (11th Cir. 1995); *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 525 (11th Cir. 1994)). That may be so, but the evidence presented by plaintiff in this case does not present such a situation. It is undisputed that none of the hiring managers knew plaintiff's age on the dates of their respective decisions not to select plaintiff.[124] Furthermore, as plaintiff points out repeatedly in brief, "no hiring manager even took the time to talk to John Stellman about Wright."[125] This evidence weighs against

---

[124] Wright Deposition at 17-22. Plaintiff admits in his deposition testimony that he does not know any of the hiring managers and had only dealt with Susan Zettel and Thomas Willoughby. Plaintiff states that none of the hiring managers were aware of his age. *Id.*

[125] Plaintiff's brief at 10. See also note 105 *supra*.

63

plaintiff's showing of pretext. Plaintiff failed to produce any evidence, other than conclusory assertions and personal assumptions, that age motivated any of defendant's employment decisions. As such, plaintiff has failed to cast doubt upon defendant's proffered legitimate nondiscriminatory explanations for its employment decisions. Accordingly, defendant's motion for summary judgment with regard to plaintiff's disparate treatment claims also is due to be granted.

A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this $2/4$ day of April, 1999.

United States District Judge

64